Homer Aki MATHIS on behalf of himself and on behalf of all others similarly situated, Plaintiff,

v.

Thomas J. BESS, as Supervising Court Stenographer, Criminal Court, New York City, Harold J. Reynolds, as Clerk of the Appellate Division of the First Judicial Department of New York; Phillip L. Weinstein, as Attorney–in–Charge, the Criminal Appeals Bureau of the Legal Aid Society of New York; Geoffrey Q. Ralls, as Administrator of the Assigned Counsel Plan; Thomas Coughlin, III as Commissioner of the New York State Department of Correctional Services; Albert M. Rosenblatt, as the Chief Administrative Judge of the State of New York; Donald Oshinsky; Linda Pazzani; Anna L. Bolgier; Joel Machlis; Rose Dunn; Anthony Moscato; Sanford Aranow; Michael Frankel; Peter F. Anderson; and Ruben S. Schofield, Defendants.

No. 85 Civ. 4426 (RPP).

United States District Court, S.D. New York.

March 28, 1991.

Davis Polk & Wardwell, New York City (Charles E.F. Millard, Jr., Steven J. Pappas, Frederick Kessler, Ogden N. Lewis, of counsel, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., Dept. of Law, New York City by Harvey Golubock, and Winthrop, Stimson, Putnam & Roberts, New York City by Peter H. Kaminer, Thomas F. Clauss, Jr., for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant moves for judgment on the pleadings and plaintiff moves to file a sec-ond amended complaint in this § 1983 class action, commenced by plaintiff *pro se* on June 10, 1985, seeking injunctive, declaratory and monetary relief from defendants who he alleges were responsible for the six-year delay in his state criminal appeal.[1] The facts underlying plaintiff's claims and the procedural history of this action are summarized in the Court's earlier opinions. *See Mathis v. Bess,* No. 85 Civ. 4426, 1989 WL 74409 (S.D.N.Y. June 29, 1989) (ordering that an evidentiary hearing be held on the issue of prejudice to plaintiff as a result of the delay); *Mathis v. Bess,* 692 F.Supp. 248 (S.D.N.Y.1988) (Goettel, J.) (denying class certification and dismissing certain claims); *Mathis v. Clerk of the First Dep't, Appellate Div.,* 631 F.Supp. 232 (S.D.N.Y.1986) (Sweet, J.) (denying defendant's motion to dismiss and plaintiff's motion to amend complaint).[2]

Plaintiff's first amended complaint, filed with assistance of counsel on October 8, 1987 and which is the subject of defendants' motion, named the following defendants: (1) Thomas J. Bess ("Bess") in his official capacity as Supervising Court Reporter, Criminal Court, New York City; (2) Geoffrey Q. Ralls ("Ralls") in his official capacity as administrator of the Assigned Counsel Plan for the Supreme Court of the State of New York, Appellate Division ("the Appellate Division"); (3) Phillip L. Weinstein ("Weinstein") in his official capacity as Attorney–in–Charge of the Criminal Appeals Bureau of the Legal Aid Society of New York City which represented plaintiff from the date of his conviction for armed robbery until May 17, 1983;[3] (4)

---

1. The Appellate Division affirmed plaintiff's conviction by memorandum decision on October 20, 1987. *See People v. Mathis,* 133 A.D.2d 1019, 519 N.Y.S.2d 989 (App.Div. 1st Dep't 1987), *appeal denied,* 70 N.Y.2d 957, 520 N.E.2d 559, 525 N.Y.S.2d 841 (1988), *reh'g denied,* 71 N.Y.2d 1030, 526 N.E.2d 57, 530 N.Y.S.2d 565 (1988).

2. Plaintiff filed a separate petition for a writ of habeas corpus, Docket No. 87 Civ. 6234, on August 27, 1987. *See Mathis v. Hood,* 851 F.2d 612 (2d Cir.1988); *Mathis v. Hood,* No. 87 Civ. 6234, 1990 WL 100869 (S.D.N.Y. July 11, 1990). In the latter opinion, this Court held that inordi-nate appellate delay had violated petitioner's constitutional rights to due process and effective assistance of counsel. The Court ordered that the affirmance of Mathis' conviction be set aside and Mathis be released pending a new appeal. The July 11, 1990 decision is under appeal.

3. Judge Goettel dismissed the first Amended Complaint against Weinstein on August 10, 1988. Although the proposed second amended complaint still contains references to Weinstein, it contains no new factual allegations involving him. In view of Judge Goettel's decision, counsel for plaintiff is directed to eliminate Wein-

Thomas Coughlin, III ("Coughlin") in his official capacity as Commissioner of the Department of Correctional Services of the State of New York; (5) Harold J. Reynolds ("Reynolds") in his official capacity as Clerk of the Appellate Division; (6) Albert M. Rosenblatt ("Rosenblatt") in his official capacity as Chief Administrative Judge of the State of New York; (7) Donald Oshinsky, Linda Pazzani, Anna L. Bolgier, Joel Machlis, Rose Dunn, Anthony Moscato, Sanford Aranow and Michael Frankel (collectively "the individual stenographers") in their individual capacities as stenographers employed in the Criminal Division of the Supreme Court of New York County; (8) Peter F. Anderson ("Anderson"), a New York attorney assigned by the Appellate Division who represented plaintiff on appeal of his criminal conviction between May 17, 1983 and July 5, 1984; and (9) Ruben S. Schofield ("Schofield"), a New York attorney assigned by the Appellate Division who represented plaintiff on the same criminal appeal from July 5, 1984 to October 2, 1986. Amended Complaint ¶¶ 17–25. Plaintiff's first amended complaint asserts jurisdiction directly under the fourteenth amendment as well as under § 1983. Am. Compl. ¶¶ 5–6; *see* Pl. Reply Mem. filed Oct. 5, 1990 at 10. The individual counts in the complaint, however, are not specifically delineated as either statutory or constitutional claims.

On January 17, 1989 plaintiff filed his motion seeking leave under Rule 15 of the Federal Rules of Civil Procedure to file a second amended complaint.[4] Plaintiff's "Revised Proposed Second Amended Complaint Class" [sic] asserts claims against: (1) Bess, Ralls, Coughlin, Reynolds, Rosenblatt, the individual stenographers, Anderson and Schofield, all named in plain-

tiff's first amended complaint;[5] (2) John Doe and Jane Roe in their official capacities as Supervising Court Stenographers for the Supreme Court of the State of New York, New York and Bronx Counties, respectively; (3) the Central Screening Committee of the Assigned Counsel Plan for the Appellate Division of the First Department ("the Central Screening Committee" or "the Committee"); (4) Matthew T. Crosson ("Crosson") in his official capacity as Chief Administrator of the Office of Court Administration for the State of New York; and (5) the State of New York. Millard Aff. filed Oct. 5, 1990, Exh. 1 at ¶¶ 17–29. Like the first amended complaint, the Revised Proposed Second Amended Complaint contains both class claims and individual claims and seeks injunctive, declaratory and monetary relief.

On February 17, 1989 named and proposed defendants Bess, Ralls, Coughlin, Reynolds, Rosenblatt, the individual stenographers, John Doe, Jane Roe, the Central Screening Committee, Crosson and the State of New York (collectively "the state defendants") moved for judgment on the pleadings under Rule 12(c) on the first amended complaint or, in the alternative, for summary judgment dismissing the complaint under Rule 56(b). On July 26, 1989 at a joint pretrial conference in this action and plaintiff's habeas corpus action, the parties agreed to conduct joint discovery for the two actions, *Mathis v. Bess* and *Mathis v. Hood.* Discovery motions were filed in this action in and after August 1989, although other discovery proceeded relating to both actions. The Court heard oral argument on the instant motions on December 3, 1990, reserving decision, and on December 18, 1990 ordered additional briefing.

stein from all further papers and pleadings filed in this action.

**4.** In a letter to the Court dated May 24, 1990 counsel for plaintiff stated:

The first Amended Complaint was designed to put pressure on government officials [sued in their official capacities] involved in the appellate process by seeking injunctive relief on behalf of the class. When Judge Goettel refused to certify the class, Mathis sought per-

mission to amend his complaint to name additional parties and to seek damages, in order to continue to press for systemic reform, against some of the defendants who had previously been sued in their official capacities for injunctive relief only.

Letter at 2.

**5.** Weinstein is improperly named in the Revised Proposed Second Amended Complaint. *See supra* note 3.

For the reasons set forth below, the state defendants' motion is granted in part and denied in part. Plaintiff's motion to file a second amended complaint is granted in part and denied in part. Shamel Atkins is joined as a plaintiff by the Court *sua sponte* pursuant to Rule 21 of the Federal Rules of Civil Procedure.

## DISCUSSION

Because the parties have submitted matters outside the pleadings not excluded by the Court, the Court will treat defendants' motion for judgment on the pleadings as one for summary judgment. *See* Fed.R. Civ.P. 12(c). Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### 1. Joinder of Shamel Atkins as a Plaintiff

On February 28, 1991 the Court received an unsolicited letter from an inmate named Shamel Atkins serving a 4.5 to 9–year term at the Clinton Correctional Facility. Atkins has not received substitute counsel since his assigned counsel was dismissed in early March 1990. Atkins pleaded for assistance from this Court, noting that even if counsel were appointed immediately, it would be unlikely that his appeal would be heard before his October 15, 1991 release date. *See* Letter stamped Feb. 28, 1991 (attached as Exhibit A to this opinion).[6]

 The Atkins letter demonstrates that the problems Mathis sought to rectify by commencing this action in 1985 are real

and persistent. Six years later, indigent criminal defendants still have no practical or meaningful way of obtaining the direct appeal belonging to them as of right. *See Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir.1988); *Ralls v. Manson*, 503 F.2d 491, 494 (2d Cir.1974) (Lumbard, J., concurring). Although Mathis' claims for injunctive relief appear moot and any injunctive award would not benefit him directly, the Court is convinced that joining Atkins as a plaintiff in this action *sua sponte* for the purpose of pursuing injunctive relief will serve the interests of judicial economy and substantial justice for all parties.

Rule 21 of the Federal Rules of Civil Procedure provides:

> Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

*See also Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952); *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y.1986); *In re Osage Exploration Co.*, 104 F.R.D. 45, 49 (S.D.N.Y.1984) (granting motion to add new plaintiffs); *Savoia Film S.A.I. v. Vanguard Films, Inc.*, 10 F.R.D. 64 (S.D.N.Y.1950). Courts may join new parties as plaintiffs sua sponte in order to prevent defendants from being subjected to a multiple lawsuit over the same issues. *See Reichenberg v. Nelson*, 310 F.Supp. 248, 251 (D.Neb.1970); *Rekeweg v. Federal Mut. Ins. Co.*, 27 F.R.D. 431 (N.D.Ind.1961). Although Rule 25 provides for substitution of parties in limited circumstances, parties may be substituted under Rule 21 in the discretion of the court in situations not covered by Rule 25. *Hackner v. Guaranty Trust Co.*, 117 F.2d 95, 98 (2d Cir.), *cert. denied*, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941) (invoking Rule 21 to substitute a new plaintiff who met amount in controversy requirement). Atkins may be named in plaintiff's second amended complaint in the individual and class claims as counsel sees fit and is hereinafter treated as a plaintiff for

---

**6.** The Court also received a letter dated March 5, 1991 from Atkins' mother, Ms. D. Atkinson, requesting this Court's intervention. Ms. Atkin-

son's letter is appended to this opinion as Exhibit B.

purposes of examining the proposed second amended complaint.

Defendants in this action cannot claim to be prejudiced by the Court's joinder of Atkins as a second plaintiff for the purposes of asserting claims for equitable relief. Because claims to be asserted by Atkins arise from the same conduct, transactions and occurrences as Mathis' claims and since Atkins and Mathis share a strict identity of interest, Atkins' claims relate back to as early as the filing of the amended complaint for statute of limitations purposes. *See Andujar v. Rogowski,* 113 F.R.D. at 155 (collecting Rule 21 cases). Discovery thus far has focused on Mathis' habeas proceeding so that earlier joinder of Atkins would not have materially affected the course of this litigation. *See Mullaney v. Anderson,* 342 U.S. at 417, 72 S.Ct. at 430.

### 2. Sovereign Immunity

The general rule is that absent waiver or congressional override, the eleventh amendment bars any suit in federal court against a state itself regardless of the form of relief requested and bars damages suits in federal court against state officials sued in their official capacity. *See Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985); *Kentucky v. Graham,* 473 U.S. 159, 161 n. 2, 169, 105 S.Ct. 3099, 3103 n. 2, 3107, 87 L.Ed.2d 114 (1985) (§ 1983 action); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The immunity created by the eleventh amendment is a limitation on the subject matter jurisdiction of the federal courts, *see Pennhurst,* 465 U.S. at 98, 104 S.Ct. at 906, and state defendants are entitled to an early determination on the issue. *See Smith v. Reagan,* 841 F.2d 28, 30 (2d Cir.1988).

Relying on the eleventh amendment as a guide to congressional intent, the Supreme Court held in *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" for the purpose of claims for money damages. *Id.* 109 S.Ct. at 2312. This interpretation applies equally to allegations of unconstitutional acts and unconstitutional omissions or failures to act. *See id.* at 2305–06. *Will v. Michigan Department of State Police* did not address the issue of whether suit may be brought based on the fourteenth amendment in appropriate cases when there is no statutory relief available. Accordingly, this Court held in *Santiago v. New York State Dep't of Correctional Servs.,* 725 F.Supp. 780 (S.D.N.Y.1989), *reh'g denied,* 734 F.Supp. 653 (S.D.N.Y. 1990), *appeal filed,* No. 90–7020 (2d Cir. 1990), *argued,* (2d Cir. Feb. 13, 1991) (Pierce, Walker, Winter, JJ.), that the eleventh amendment did not bar plaintiff's claim against a state agency, the New York Department of Correctional Services (DOCS), for retroactive damages under the equal protection clause of the fourteenth amendment. *Id.* at 788.

#### a. *The State of New York*

■ Plaintiffs' proposed claims for injunctive and declaratory relief against the State of New York are not required in order to grant effective relief to plaintiffs and fall squarely within the prohibition of the eleventh amendment. Accordingly, plaintiffs' motion to amend on that basis is denied. Plaintiffs' proposed claims for damages against the State of New York under § 1983 are barred by *Will v. Michigan Department of State Police.* However, plaintiffs' proposed claims for damages against the State of New York directly under the fourteenth amendment may be brought under *Santiago* and leave to amend the complaint to assert such claims is granted.

#### b. *The State Officials*

■ Plaintiffs' motion to amend the complaint in order to add claims seeking money damages under § 1983 from Bess, Ralls, Reynolds, John Doe and Jane Roe in their

official capacities is denied under *Will*.[7] Plaintiffs' motion to add claims for damages under the fourteenth amendment against Bess, Ralls, Reynolds, John Doe and Jane Roe is also denied since *Santiago* would allow such claims only against state agencies not individual officers acting in their official capacity.

█ Any attempt by the individual state defendants to bar plaintiff Atkins' claims for injunctive relief on eleventh amendment grounds is ill-founded. *See Ex Parte Young*, 209 U.S. 123, 155–59, 28 S.Ct. 441, 452–53, 52 L.Ed. 714 (1908) (habeas corpus) (state officer may be enjoined despite eleventh amendment from enforcing rate act alleged to be unconstitutional under the fourteenth amendment). Interpreting *Ex Parte Young*, the Supreme Court has indicated that injunctive relief may be entered against state officers where compliance with the injunction would have only an ancillary effect on state funds. *See Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) ("State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct.").

The Supreme Court's interpretation of § 1983 is consistent:

[o]f course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State."

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106

n. 14, 87 L.Ed.2d 114 (1985)) (holding that neither state nor state officials acting in their official capacities were "persons" under § 1983).

Accordingly, because the injunctive relief requested by plaintiffs in this action would have only an ancillary effect on the state treasury and would not have the practical effect of a damage award against the state, the claims for injunctive relief asserted in the first amended complaint against Bess, Ralls, Coughlin, Reynolds and Rosenblatt are not subject to dismissal if such persons hold the official positions on which they were sued.[8] The Court takes judicial notice of the fact that defendants Rosenblatt and Reynolds no longer hold such positions and dismisses plaintiffs' claims for injunctive relief as to them. In view of the Court's joinder of a new plaintiff having a live claim for injunctive relief, defendants' motion for summary judgment dismissing the claims for injunctive relief in the amended complaint against Bess, Ralls and Coughlin is denied without prejudice to renew. Plaintiffs' motion to assert claims for injunctive relief against John Doe, Jane Roe and Crosson in the second amended complaint is granted.

### c. *The Individual Stenographers*

█ Because the individual stenographers are not sued in their official capacities, the eleventh amendment is of no assistance to them. *See Dube v. State Univ. of New York*, 900 F.2d 587 (2d Cir.1990), *petition for cert. filed*, No. 90–549 (Sept. 27, 1990). Applying *Will v. Michigan Dep't of State Police* to plaintiffs' § 1983 claims, the most this Court can conclude as a matter of law is that the individual stenographers are state employees. *See* N.Y. Jud.Law § 39(6) (McKinney 1983).[9] Since

---

**7.** The Court rejects plaintiffs' argument, Tr. at 66, that although Bess, Ralls, Reynolds and John Doe are alleged to be state employees in the pleadings, they are being sued as local rather than state officials and thus not subject to the eleventh amendment. Plaintiff conceded at oral argument that as state employees they have no liability for damages under § 1983. Tr. at 33–34.

**8.** Judge Goettel did not dismiss Mathis' claims for equitable relief. He held only that Mathis could not meet the typicality requirement imposed upon named plaintiffs in a class action because at the time the class would have been certified, Mathis no longer had a live controversy. *See Mathis v. Bess*, 692 F.Supp. 248, 257–58 (S.D.N.Y.1988).

**9.** *See generally Durante v. Evans*, 116 Misc.2d 814, 456 N.Y.S.2d 911, 917 (Sup.Ct.1982), *aff'd*

the Court must draw all inferences in favor of Mathis as the non-moving party, summary judgment dismissing the existing complaint against the individual stenographers is denied.[10]

■ Finally, neither absolute judicial immunity nor quasi-judicial immunity applies to the individual stenographers in this action. *See Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (state court judge sued in individual capacity for dismissing probation officer not entitled to absolute immunity for judicial acts); *McLallen v. Henderson,* 492 F.2d 1298, 1299–1300 (8th Cir.1974) (court reporters not entitled to defense of quasi-judicial immunity since their duties are ministerial); *McCray v. State of Maryland,* 456 F.2d 1, 4 (4th Cir.1972) (same).

d. *The Central Screening Committee*

■ The Central Screening Committee ("the Committee") is not yet a party to this action but is named in plaintiffs' Revised Proposed Second Amended Complaint. Because the state defendants answered the amended complaint on November 6, 1987, an amendment to the pleadings at this juncture is not plaintiffs' right but is instead a matter for the Court's discretion. Fed.R. Civ.P. 15(a). Plaintiffs seek to add claims for injunctive, declaratory and monetary relief against the Committee itself. There are no proposed claims against the Committee members. Tr. at 38.

Although the departmental screening committee was originally composed of volunteer attorneys consisting of representatives of various bar associations, the Central Screening Committee is an entity formed in 1979 composed of unpaid attorneys named by the Bar Associations to assist the City in screening attorneys' qualifications for the criminal defense of the indigent accused under Section 18–B of the

County Law of New York. In 1980 the Appellate Division, First Department, by order made the Central Screening Committee an adjunct to that court's authority over the Assigned Counsel Plan. N.Y. Comp.Codes R. & Regs. tit. 22 § 612.1 (1986). The Committee has authority and responsibility to oversee the operation of the assigned counsel plan, *id.* § 612.3, to screen applicants for panel membership and determine their qualifications, *id.* § 612.6(a)–(b), to certify a list of qualified attorneys to the plan administrator, *id.* § 612.6(c), and to file annual evaluations of the plan with the Appellate Division. *Id.* § 612.7.

Despite these regulations, it is the plan administrator who "shall designate an attorney from the appropriate county panel" and who shall prepare panels for appeals upon receipt of the lists of attorneys certified by the bar associations. Assigned Counsel Plan approved April 28, 1966 para. IV.C (Def. Supp. Mem. filed Jan. 10, 1991, Exh. C). The Appellate Division may at any time add or remove panel attorneys. N.Y.Comp.Codes R. & Regs. tit. 22 § 612.9(a) (1986). Budgets for the Unified Court System covering the years 1983 through 1990 confirm that ultimate authority for the selection and appointment of counsel for indigent criminal defendants lies with the Appellate Division and the plan administrator. Def. Supp. Mem., Exh. D. *See also* N.Y.Comp.Codes R. & Regs. tit. 22 § 80.3(c) (1986) ("Supervision of the administration and operation of the following programs shall remain the responsibility of the appellate divisions or Presiding Justices, as now provided by statute: assignments of counsel...."). The Central Screening Committee's role is not functional but rather of a watchdog nature.

Since Ralls is already a defendant in this litigation, justice does not require that

---

*as modified,* 94 A.D.2d 141, 464 N.Y.S.2d 264 (App.Div.1983), *aff'd in relevant part,* 62 N.Y.2d 719, 465 N.E.2d 367, 476 N.Y.S.2d 828 (1984).

**10.** The Court rejects the state's argument that plaintiffs' § 1983 claim against the stenographers is untimely on statute of limitations grounds. Mathis' original pro se complaint pro-

vided these defendants with sufficient notice of the pendency of a lawsuit because it named "STENOGRAPHERS (In charge of transcribing my trial minutes)." *See Mathis v. Bess,* 692 F.Supp. 248, 253 (S.D.N.Y.1988) ("the substance of the original pro se complaint ... was addressed to the inaction of the court stenographers").

plaintiffs be granted leave to add separate claims against the Central Screening Committee. Accordingly, plaintiffs' motion to amend the complaint to add claims against the Central Screening Committee is denied.

## CONCLUSION

Summary judgment dismissing all claims in the amended complaint seeking injunctive relief against Reynolds and Rosenblatt is granted. Summary judgment dismissing (1) the claims for damages against the individual stenographers and (2) the claims for injunctive relief against Bess, Ralls and Coughlin is denied.

Plaintiffs are granted leave to file a second amended complaint adding (1) claims for damages solely under the fourteenth amendment against the State of New York and (2) claims for injunctive relief—whether under § 1983 or directly under the constitution—against John Doe, Jane Roe and Crosson. The second amended complaint shall reflect the Court's joinder of Shamel Atkins as a plaintiff.

IT IS SO ORDERED.

## EXHIBIT A

Mr. Shamel Atkins, # 87-A-5852

Clinton Correctional Facility, -Annex-

P.O. Box 367-A

Dannemora, New York. 12929

Judge: Robert P. Patterson, Jr.

Southern District of New York
U.S. Court House, Foley Square,
New York, N.Y. 10007-1581

RECEIVED
FEB 2 8 1991
CHAMBERS OF
JUDGE ROBERT P. PATTERSON

RECEIVED
FEB 28 1991
PRO SE OFFICE

Dear Mr. Patterson:

I would like to initiate this letter, so that action would be taken with respect to my appeal.

On 4-12-88 the appellate Division First Department, assigned counsel. Twenty (20) Months Expired Between that time and time of the Attorney WithdrawA From the case. During that period not one solid piece of legal work was Done with respect to my appeal, Nor has any Been Submitted. Then there is the matter of Assignment of New Counsel, to Date No action has Been taken with respect to My appeal.. Assuming that Counsel is Appointed Immediately, taking Into Account The time it takes to Review, Research, Perfect A Brief and the Added Period Allotted for Respondent"s Brief, Argument and Decision, A Considerable time Frame will have Been Expired. Perhaps even a matter of Two Additional Years Added to the time Already lost DUE, I Believe, To the Appellate Division First Department, Lack of Constructive Action. An The Attorney"s Failure to provide for Meaningful Counsel is not A mere Technical Defect; it is Infused with Constitutional Imperatives. On 3-30-90 the Attorney was Relieve from the Responsibilities in this Matter... An to this Day no new Counsel Been Assigened One year has Expired with No Counsel, And Im Serving 4½ To 9 - Years Prison Term. I will be going to see the parole borde, 8-6-91 And my released Date is

O-15-91, And it will be Impossible for my Appeal to be heard if I get Assigned New counsel. I see that the Appellate Division First Department, Do Not Understand The Constitutional Rights, Also your Message to the Appellate Division, Could you Help Me please in any way it would be Greatly Appreciated.

I Would Like To Thank You For Your Time and Consideration Given in this Matter, Because it is of the utmost importance to my Family and I.

I Will Anxiously be awaiting your Reply.

Respectfully,

SHAMEL ATKINS

EXHIBIT B

Ms D. Atkinson
1481 Washington Avenue,
Bronx, New York. 10456

Judge: Robert P. Patterson, Jr.
Southern District of New York
U.S. Court House, Foley Square.
New York, N.Y. 10007-1581

3-5-91

Dear Mr. Patterson:

Im Writing this letter Hoping that someone will take time to look into this matter of my (son) Appeal, his name is (Shamel Atkins) Ind, 1316/87 M- 3170) Appeal NO.) and my (son) Appeal has been pending since(1987) it would appear that some Corrective measures be employed in order to rectify things on at least a minimul level. the Attorney the was assigned by the Appellate Division First Department, name is (Barbara Waltuch Esq) I have A letter from (Judge: Francis T. Murphy) of the Appellate Division, indicat- ing- that the court sent (Ms Waltuch) the transcripts pertaining to my (son) case, and I also have her letter of response, Dated (9-2-89) and the court letter date (June 1, 1989) and she was assigned to represent my (son) 4-12-8 it been two years and she has nothing to pass on to the next Attorney, my (son) and (myself) asked the attorney for the work she has done, the attorney response was (I don"t have any work) and my (son) will see the parole borde in (5) months, without having the chance to prove his innocence., and my (sc Asked me not to publicize the matter because he thinks you will handle this matter. I wrote the Appellate Division, and told them that I was going to Publicize the delay on my (son) Appeal, because the Appellate Division didn' Take (HeeD) to what you said and my (son) is the Proof and I talk with two Newpaper about my (son) case and I also showed them the New York (Law Journ with your Article in it that clearly shows my (son) Constitutinal Rights

1032

Being (Violated) and why. it been one year that the Attorney has been relie'
From. her responsibilities in this matter and to this day (NO) reassignment
Of New Counsel and there is (NO) excuse for this kind of management, and my
(son). Suffer for it. Im not going to see my (son) suffering for something he
has no power over. and the Appellate (Judges) don"t exercise there Authority
to maintain whats just and right. because maybe publicizing is the only way
Any (Justice) because there is no fairness at all in this matter with my (son
I would like to futher add, that I filed a complant with the Departmenal –
Disoplinary Committe, about the Attorney (Barbara. Waltuch Esq.) I just think
you should know, I hope my (son). is right, and you will help him because you
Are his last (HOPE).

I would like to thank you for your time Invested in this matter, because it
Is Highly Appreciated.

Respectfully

-Ms D. Atkinson